No. 12.980.

C. H. MOORE vs. H. C. DREW.

SYLLABUS.

1. Plaintiff, surety on a twelve months' bond, paid it, and sues defednant, co-surety, for one-half of amount so paid, alleging insolvency of the principal and other co-sureties.
2. HELD: Under the facts and circumstances disclosed, equity and good conscience alike preclude his recovery.
3. And in law he must be held responsible both for failure to take timely action, after he had paid the bond, to protect it by means of the property, the purchase price of which, with the vendor's privilege retained, it represented; and for the situation now existing, rendering subrogation unavailing, and preventing recourse against the property to recoup those who have paid it, or might now be held liable on its account.

ON APPEAL from the Twelfth Judicial District Court for the Parish of Calcasieu. *Read, J.*

*Pujo & Moss* for Plaintiff, Appellant.

---

*Williams & Sugar* for Defendant, Appellee.

Argued and submitted December 22, 1898.

Opinion handed down January 23, 1899.

Rehearing refused, reasons assigned, March 20, 1899.

The opinion of the Court was delivered by

BLANCHARD, J. The Cane River Lumber Company conducted a saw-milling enterprise at Chopin in Natchitoches Parish.

It was not prosperous, became involved in debt and insolvent.

Various creditors brought suits and recovered judgments for a large amount in the aggregate, some of the judgments carrying recognition of vendor's privilege and special mortgage upon the property of the company.

Executions issued, the property was seized and at the sale which followed was adjudicated to E. F. Wasey on twelve months' credit. Whereupon Wasey executed a twelve months' bond for four thousand, six hundred and ten dollars, with the plaintiff, the defendant and two other persons as his sureties.

This was on June 3, 1893.

The sheriff assigned this bond to the New Orleans National Bank, the ranking creditor of the insolvent concern.

The bond described the property sold, for the purchase price of which, in part, it was given, and stipulated retention of the vendor's privilege.

It was not paid at its maturity. Interest thereon, from time to time, was paid, and extensions had, under circumstances, however, that did not operate to release the sureties.

This continued down to April 2, 1897, prior to which time Wasey, the principal, and Kelsoe and Sandidge, two of the sureties, had become insolvent.

This left plaintiff and defendant the only solvent obligors of the bond.

The bond had been placed in the hands of attorneys for collection, and on the date last mentioned the plaintiff arranged with the attorneys to take up the bond, paying part of the amount due in cash, and giving his promissory notes for the remainder at short maturities, which notes he duly met.

Subsequently he brought this action against defendant, his co-surety, to recover one-half of the amount he had so paid, alleging the insolvency of the principal and the other two sureties.

On behalf of defendant a plea to the jurisdiction of the court was tendered, on the ground that suit on the twelve months' bond should have been instituted in the District Court in and for the Parish of Natchitoches, since it (the bond) had been given in the course of judicial proceedings there taken.

There is no merit in the plea. This is not a suit on the bond, but an action to recover money from defendant which plaintiff alleges he was obliged to pay on his account, and was rightly brought in the parish of defendant's residence. The exception to the jurisdiction was properly overruled.

The defense, on the merits, is discharge from liability to plaintiff on account of the bond for the reason that by and through the acts and conduct of plaintiff defendant has been deprived of the right of subrogation to the vendor's privilege, which the bond carried against property of sufficient value to have protected the sureties.

In an amended answer defendant charged, in substance, that by paying the bond plaintiff had merely satisfied his own debt; that Wasey, the nominal principal, in purchasing the property for which the bond was given, acted for the plaintiff; that the latter was the real principal in the obligation and not merely a surety thereon; and that defendant's obligation on the bond was that of surety for plaintiff.

This amended answer was objected to by plaintiff on the ground that it contained defenses inconsistent with that set up in the original answer, thereby changing the issue.

The objection was sustained and defendant reserved a bill.

In the view we take of the case it is not necessary to pass upon the question of practice here raised.

In June, 1893, shortly after the purchase of the Cane River Lumber Company's outfit by Wasey at sheriff's sale, a new corporation was organized, called the Lake Lumber & Shingle Company, Limited. It became the successor of the old company.

Its incorporators were Moore, the plaintiff, Drew, the defendant, George Lock, E. F. Wasey and J. T. Sandidge. All of these parties were named in the act of incorporation directors of the company.

The capital stock of the corporation was fixed in the charter at sixty thousand dollars, divided into shares of one hundred dollars each, to be paid for when issued, and the company was authorized to do business as soon as $25,000 of its stock was subscribed and paid for.

Neither in the act of incorporation, nor in any paper attached

thereto, does there appear a list of subscribers to the stock, with the number of shares taken by each. The stock book of the company, however, shows certificates of stock issued to plaintiff for 199 shares, to Kelsoe & Sandidge for 88 shares, to George Lock, a business partner of plaintiff, for 1 share, to E. F. Wasey 1 share, and to defendant, Drew, 1 share.

Not a dollar for any of this stock was paid into the treasury of the concern.

On the day of the incorporation the Board of Directors, named in the act of incorporation, met and organized by electing George Lock, president, J. T. Sandidge, vice-president, and E. F. Wasey, secretary and treasurer.

No meeting thereafter of either directors or stockholders was held until May, 1897, four years later, when a *quorum* of the directors met and the secretary, he being one of the three directors at the meeting, informed the other two that suits against the company had been filed by Lock, Moore & Co., and by H. C. Drew. Nothing was done at the meeting.

Shortly after the incorporation, Sandidge, vice-president, disposed of his stock, as did Kelsoe, and the transfers were made on the books of the company. No other vice-president was, however, chosen.

Beyond adopting a charter, organizing a board of directors and issuing shares of stock never paid for, the company did nothing.

Wasey executed in its favor in August, 1898, following the incorporation, an act of sale, transfer and conveyance of the milling outfit and property which he had acquired on June 3, 1893, at sheriff's sale in execution against the Cane River Lumber Company. The consideration was stated to be one thousand and twenty dollars cash and the assumption of the twelve months' bond he had given with plaintiff, defendant and others as sureties. No one appeared to accept this sale on behalf of the company, and no resolution was ever adopted by the board of directors, or authority given by the stockholders for this purchase and assumption.

No effort whatever was made by the company to run the mill or make use of the property thus conveyed to it. The mill lay idle in charge of parties who seem to have been employed and paid by Lock, Moore & Co. Lock, Moore & Co. were not subscribers to the concern's stock. What they had to do with the mill, or what interest they had in its affairs, justifying them in the expenditure of money in its

behalf, does not appear, except by inference that they represent Moore, the plaintiff herein. Moore, as seen, was the principal stockholder of the company, and he was the owner of more than one-third of the shares representing the capital stock of Lock, Moore & Co., Limited, a large lumber manufacturing concern of Calcasieu parish. Lock, the senior member of the latter company, was apparently only nominally connected with the Lake Lumber and Shingle Company, for there was issued to him only one share of its stock, of the par value of one hundred dollars, enough, however, to make him eligible to the presidency of the concern, to which, as we have seen, he was chosen.

This Lake Lumber and Shingle Company seems to have been a mere paper corporation, under the guise of which the mill property was really held by Moore, the plaintiff, or by Lock, Moore & Co. for him, or for themselves. If this be so, what he or they expended for its keep, and which was afterwards used as the means for effectuating its formal transfer to them, was his own debt, or theirs.

At the time the plaintiff paid the twelve months' bond which is the basis of this action, the company was the apparent owner of the property upon which the vendor's privilege, retained in the bond, rested. It was the holder, of record, of the title, and if any force attaches to the act of conveyance by which it acquired the title, it (the company) was bound for the debt, which the bond represented, by reason of its assumption thereof.

Plaintiff took up this bond on the second of April, 1897. He thereby became subrogated to the rights attaching to the same, including the vendor's privilege. He could, at once, have proceeded against the property on which the privilege rested to enforce the same. He did not do so.

Instead, we find that Lock, Moore & Co., his own business firm, filed, on May 1, 1897, a suit against the Lake Lumber and Shingle Company, claiming a judgment for $3,609.08, moneys averred to have been advanced to the latter company for the care and preservation of the mill property located at Chopin, and for paying taxes thereon. No privilege on the property for these advances was claimed, if any existed; only an ordinary judgment was sought.

No defense was interposed by defendant company. Judgment by default was confirmed in favor of the plaintiffs in the suit. Execution followed, issued to the sheriff of Natchitoches parish, who seized

.the mill property at Chopin, duly offered the same at public sale, and adjudicated it to Lock, Moore & Co., Limited, for the sum of four thousand one hundred dollars.

So that plaintiff's business firm—a company in which he is inter-.ested to the extent of more than one-third of its capital stock—became the purchaser and is now the owner of the property upon which the vendor's privilege, securing the twelve months bond, had rested.

Notwithstanding the ordinary judgment under which this sale was effected, no steps were taken by the plaintiff, who had taken up the bond, to claim for it or for himself priority of payment out of the proceeds of the sale of the property.

And now, after he and his business associates have thus acquired and held in ownership the property representing the twelve months' bond, he sues defendant to recover one-half of the bond itself.

He has the property, as well as the proceeds of its sale at the suit of his firm against the Lumber and Shingle Company, of which he was the real head and front, and now seeks a judgment against defendant for half of the amount paid on the bond.

Under the facts and circumstances of the case, equity and good conscience alike are against his pretensions in this regard. And in law he must be held responsible both for failure to take timely action, after he had paid the bond, to protect it by means of the property, the purchase price of which, with the vendor's privilege, it represented; and for the situation now existing preventing recourse against the property to recoup those who have paid it, or might now be held liable on its account. C. C., 3061, 2161, 2163; 2 R. 424; 5 Ann., 500; 13. Ann., 430; C. P., 710; 5 Ann., 513; H. D. p. 1540.

The transcript contains much that is immaterial to the true issue upon which the case turns, regarded from the court's point of view. And so we have omitted mention of the same herein.

It is, therefore, ordered and decreed that the judgment appealed from be and is hereby affirmed.

### ON APPLICATION FOR REHEARING.

BREAUX, J. Plaintiff urges that the judgment is erroneous because based upon the supposed facts that the twelve months' bond was paid by him on April 2, 1897, and that the property of the Cane River

Lumber Company, upon which the vendor's privilege rested to secure the bond, was sold under the judgment of Lock, Moore & Co., Limited, *after the bond had been paid.* Contending that he, plaintiff, did not pay the bond and did not get possession of it until *after* the sale of the property under the Lock, Moore & Co. judgment, his position is that no transfer and assignment, and no subrogation of rights under the bond, or in and to it, in favor of himself took place until after execution of the Lock, Moore & Co judgment, and, hence, he was in no position to assert superior claims on the property as subrogee of the bond at the time the lumber company sold it under its judgment.

This is utterly untenable. On April 3, 1897, plaintiff paid on the bond $2,286.20 in cash, and on that day gave his two individual notes, one for $1,531.67 due July 3, 1897, the other for $1,552.23, due September 3, 1897, for the remainder. This was a "taking up" of the bond by him, and while as between himself and the holder of the bond novation may not have taken place, and the holder may have retained possession of the bond until the last note was paid, it is none the less clear and certain that when he paid the $2,286.20 in cash he became, in law, the subrogee of the bond to that extent, and when in July he paid the first of the two notes, for $1,531.67, he became its subrogee to the further extent of that sum.

So that when, on August 28, 1897, the Cane River Lumber Company's property was sold and bought by Lock, Moore & Co. for $4,100 (being two-thirds of its appraised value), plaintiff, who was the "Moore" of that firm, stood as the subrogee of the twelve months' bond, with its vendor's privilege, for the sum of $3,817.87 already paid by him in cash on the bond to its holder. Not only that, but his individual note for the remainder of the bond was out, and the note was, at the date of the sale, within six days of its maturity. The man having an interest to take up the bond, and who had done so to the extent mentioned, had, certainly, a full standing in law to claim the benefit of the vendor's privilege at the time the property was sold, for the full amount he had paid on the bond, and we think, also, for the amount he was responsible for on his remaining outstanding individual note.

Yet he took no steps whatever to assert his superior claim for priority of payment out of the proceeds of the property, over the ordinary judgment of his business firm.

Again, plaintiff urges error in the judgment to his prejudice

because the court, in its opinion, inadvertently referred to him as the *present* owner of the Cane River Lumber Company's property. What was meant in that part of our opinion was that plaintiff's firm had bought and become the owners of the property. After purchasing and holding it for over twelve months they sold it to another. So that, at this time, they do not hold it. But the fact that after holding it a year or more they sold it, in no manner alters the situation to the benefit of plaintiff. It remains that his business firm bought the property at the sale under their ordinary judgment, and retained the proceeds of the sale—plaintiff, then subrogated to the bond for $3,817.87, all the while standing by in silence and permitting this to be done. And afterwards when Lock, Moore & Co., Limited, sold the same property to Cooley they received for their own account its proceeds, $4,500.

Rehearing refused.